IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Julien Garcon,<br><br>                  Petitioner,<br><br>    vs.<br><br>John R. Owen,<br><br>                  Respondent. | Civil Action No. 6:11-1411-MBS-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

      This matter is before the court on the respondent's motion to dismiss or, in the alternative, for summary judgment (doc. 27). The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

      The respondent filed a motion to dismiss or, in the alternative, for summary judgment on October 6, 2011. On October 6, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the motion to dismiss and motion for summary judgment procedures and the possible consequences if he failed to adequately respond to the motion. On November 9, 2011, the petitioner filed a response in opposition to the motion.

## BACKGROUND OF THE CASE

The petitioner is currently incarcerated at the Federal Detention Center located in Miami, Florida (m.s.j., ex. A, p. 1). At the time this petition was filed, he was housed at FCI Williamsburg located in Salters, South Carolina (*id.*). He is serving a 120-month term of incarceration imposed by the United States District Court for the Southern District of Florida for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (*id.*, ex. B, pp. 1-2).

The petitioner is anticipated to be released from his current term on December 28, 2015, with credit for Good Conduct Time (*id.*, p. 2). The disciplinary action underlying this petition occurred at FCI Williamsburg (*id.*). Respondent John Owen is the current Warden at FCI Williamsburg. The only proper respondent in a habeas petition is the "person having custody of the person detained." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Because the petitioner was incarcerated in this district at the time he filed this action, the Warden of FCI Williamsburg was the proper respondent at that time. As he is out on writ in Florida and is expected to return to FCI Williamsburg, Warden Owen does not contest his status as a proper respondent (*see* m.s.j. at p. 3).

The petitioner seeks to overturn his administrative disciplinary action for assault he received while incarcerated at FCI Williamsburg. The underlying facts of that case are as follows: On March 8, 2010, at approximately 4:45 p.m., Correctional Officer Vail Lemel saw the petitioner holding another inmate (Jones, #30153-007) in a headlock punching him in the head and facial area (petition, ex. A, Incident Report, § 11). The petitioner was charged with violating Code 201, Fighting. The incident report was delivered to the petitioner on March 31, 2010 (*id.*, §§ 14-15).

The incident report was investigated by Lieutenant Howell on March 31, 2010 (m.s.j., ex. C, Investigation, §§ 23-27). During this investigation, the petitioner made a statement claiming he was simply defending himself (*id.* § 24). He requested two

2

witnesses, inmates Parker and Harris (*id.*). Lieutenant Howell interviewed these inmates (*id*. § 25). Both inmates indicated that Jones struck the petitioner and that the petitioner was merely trying to hold inmate Jones. Lieutenant Howell reviewed the video surveillance tapes, which revealed that the petitioner stepped toward inmate Jones as Jones attempted to back away. Both inmates raised their fists in a fighting stance, and the petitioner struck inmate Jones first. Inmate Jones fell to the floor, and the petitioner jumped on him. Jones swung at petitioner and struck him. The petitioner picked up inmate Jones and had him in a headlock, from which petitioner proceeded to throw inmate Jones to the floor. As Jones attempted to kick at the petitioner, the petitioner grabbed him by the leg and dragged him across the floor. The investigating Lieutenant concluded that video evidence contradicted the inmates' statements (*id.*).

Upon additional investigation, the officers determined the incident was more of an assault than a fight, and, as such, the incident report required rewriting to ensure petitioner had sufficient notice of the basis of the charge against him (m.s.j., ex. D, Incident Report #1988374, § 11). The report stated that a Special Investigative Services ("SIS") investigation was completed on April 14, 2010, which determined from review of the video surveillance system that the petitioner punched inmate Jones in the face with a closed fist, knocking him to the floor. The petitioner was seen pursuing Jones and punching him several times until he was pulled away by other inmates (*id.*). The incident report, written by SIS Technician Egan, charged the petitioner with violating Code 224, Assaulting Any Person (*id.*, §§ 9-10, 12-13). A copy of this report was delivered to the petitioner the same day it was written (*id.*, §§ 14-16).

The matter was investigated by Lieutenant Parnell the same day (*id.*, Part III). The petitioner elected to make a statement, contending he was not guilty and that he was not given proper notice within 24 hours of the date of the incident (*id.*, § 24). He requested

3

no witnesses, and the matter was referred to the Unit Discipline Committee ("UDC") for processing (*id.* §§ 25, 27).

The UDC hearing was conducted on April 19, 2010 (*id.*, Part II, § 21). At the UDC hearing, the petitioner again stated he was not guilty (*id.*, § 17). Because of the serious nature of the charges, the UDC referred the matter to the Discipline Hearing Officer ("DHO") (*id.*, §§ 18-19). The petitioner was advised of his rights before the DHO (m.s.j., ex. E, Notice of Rights forms). He indicated that he did not want a staff representative. He indicated that he wanted inmates Tom Parker and Garrison Harris as witnesses who both would testify the incident was "basically self defense" (*id.*).

The DHO hearing was held on April 28, 2010 (m.s.j., ex. F, DHO report, § I.B). The petitioner was present and again advised of his rights (*id.*, § V). When asked about the charge, petitioner stated "I was assaulted first. It went on to a further altercation. It went on from there. I told the staff member it was self defense. I didn't admit nothing to Mr. Egan" (*id.*, § III.B). The petitioner did not request assistance from a staff representative (*id.*, § II.A). Also, at the time of the hearing, the petitioner elected to proceed without his witnesses, and he signed a waiver to that effect (*id.*, §III.B.3; m.s.j., ex. E, Notice of Rights forms; ex. G, Jerrie ComStock decl. ¶¶ 10, 17). The DHO, Jerrie ComStock, stated in a declaration that the petitioner was advised that the hearing could be postponed to obtain his witnesses, but the petitioner elected to proceed without them (ComStock decl. ¶ 10). The DHO relied on the following evidence in making the decision: "the written statement of the reporting staff member regarding his eyewitness account of the incident, photographs and injury assessments conducted on [the petitioner] and inmate Jones, the SIS report outlining the investigation, and [the petitioner's] statement, 'It went on to a further altercation'" . . . (m.s.j., ex. F, § V).

After consideration of all the evidence, the DHO found that the petitioner committed the prohibited act as charged (*id.*, § IV). The DHO imposed a variety of

4

sanctions for the offense, including disallowance of 27 days good conduct time, 30 days disciplinary segregation (suspended pending 180 days clear conduct), loss of commissary privileges 180 days, and loss of telephone for 180 days (*id.*, § VI). The DHO prepared a written report detailing this decision, the evidence relied upon, and the reasons for the sanctions imposed (*id.*, §§ V and VII). A copy of this written decision was delivered to the petitioner, and upon being appealed through the administrative remedy process, all disciplinary action and sanctions were upheld (petition, ex. D).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

5

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The petitioner seeks to overturn his administrative disciplinary action for assault claiming several due process violations, including improper investigation by the reporting officer, denial of witnesses, denial of the opportunity to present documentary evidence, denial of access to exculpatory evidence, and inadequate notice of the charge. He also claims that he is entitled to self-defense in federal prison and that the DHO did not have sufficient evidence to support her decision. He seeks to have the disciplinary action expunged from his records and for 27 days of good conduct time to be restored.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Constitutional Amendment XIV § 1. Prison officials must accord an inmate minimal due process requirements for a disciplinary hearing as this hearing could result in deprivation of a state-created liberty interest, good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The Supreme Court has outlined the due process protections inmates are entitled to in regards to prison disciplinary proceedings where the inmate's liberty interest is at stake. These due process protections are: 1) 24 hours advance written notice of the charges; 2) a written statement citing the evidence relied upon and the reasons for the action taken; and 3) the right by the inmate to call witnesses and present documentary evidence, if institutional safety will not be jeopardized. *Id.* at 563-67.

6

The petitioner has not shown that his procedural due process rights were violated. First, the petitioner argues that he "possessed a constitutional due process right to receive the incident report within 24 hours . . . after the alleged incident and to have a different person investigate and report an incident" (petition at p. 9). However, the standard as set forth in *Wolff* is as follows: "We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." 418 U.S. at 564. Here, the petitioner was given advance written notice of the assault charge more than 24 hours before the UDC and DHO hearings. To the extent the petitioner claims the defendant failed to follow BOP procedures, "The prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff* . . . ." *Macia v. Williamson*, 219 Fed. Appx. 229, 233 (3rd Cir. 2007).

Second, the record of the hearing further reflects the decision of the DHO, the evidence relied upon, and the reasons for the decision and the sanctions imposed (m.s.j., ex. F, DHO report, §§ V-VII). The DHO relied on the following evidence in making the decision: "the written statement of the reporting staff member regarding his eyewitness account of the incident, photographs and injury assessments conducted on [the petitioner] and inmate Jones, the SIS report outlining the investigation, and [the petitioner's] statement, 'It went on to a further altercation'" . . . (*id.*, § V). A copy of this written decision was delivered to the petitioner.

Third, the petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. The petitioner declined the staff representative, but requested witnesses. In his affidavit, the petitioner claims he asked Officer Washington why his witnesses were not present and

7

Officer Washington told him that he could not find them (resp. to m.s.j., ex. A, aff. ¶ 1). However, in his affidavit, Officer Washington testified that he did not have such a discussion with the petitioner, his only involvement in the hearing was to escort the petitioner to and from the hearing room, and he was not involved in determining whether an inmate could have witnesses testify at his hearing (m.s.j., ex. H, Kendall Washington decl. ¶¶ 3, 5). At the hearing, the petitioner signed a waiver stating that he wished to proceed without the witnesses, which the DHO watched him sign (m.s.j., ex. E, Notice of Rights forms; ex. G, ComStock decl. ¶10). The petitioner claims that he did not "voluntarily" waive his witnesses as he was on ibuprofen when he signed the form, and he did not read the document before signing (resp. to m.s.j. at p. 4). However, there is no evidence that ibuprofen affected the petitioner's mental capacity such to make his waiver involuntary, and it was the petitioner's responsibility to read what he was signing. Furthermore, even assuming that the petitioner's waiver of his witnesses was wrongfully induced by Officer Washington or anyone else, such error was harmless given the substantial evidence of the petitioner's guilt. *See Macia*, 219 Fed. Appx. at 234 (finding that even if the petitioner's waiver of right to call witnesses and present documentary evidence was wrongfully induced, such error was harmless). The investigation into the charge against the petitioner revealed that the statements of the petitioner's two named witnesses were directly contradicted by the video surveillance footage of the incident (m.s.j., ex. C, Investigation, § 25). Furthermore, the petitioner contended that the witnesses would have testified that his part in the incident was "basically self defense" (m.s.j., ex. E, Notice of Rights form). As set forth below, self defense is not a valid defense in the context of prison disciplinary proceedings. Accordingly, the testimony of these witnesses would not have changed the outcome of the DHO hearing, and thus the petitioner suffered no prejudice.

While the petitioner claims that he requested exculpatory information in the form of the video surveillance footage for use at the hearing, there is no record of any such

request in the records of the hearing, and the DHO denies ever getting such a request (*see* m.s.j., ex. G, Comstock decl. ¶ 16; ex. F, DHO report). Furthermore, as argued by the respondent, the incident reports and investigation of the matter make clear that the video was anything but exculpatory. The petitioner further claims that he was not given witness statements, which he claims were also exculpatory evidence (resp. to m.s.j. at p. 4). The petitioner identified inmates Parker and Harris as witnesses who would testify that he was only defending himself in the altercation with Jones. However, because self defense is not a valid defense to assault in the prison context, the witness statements cannot be characterized as exculpatory. *See Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011).

The petitioner further argues that the evidence was insufficient to find him guilty of assault (resp. to m.s.j. at p. 4). The DHO's decision satisfies due process if there is some evidence in the record to support the decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455-56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Supreme Court noted in *Hill*,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56. Upon review of a disciplinary proceeding, the court should determine only whether the DHO's decision to revoke good time credits has some factual basis. *Id.*; *McPherson*, 188 F.3d at 786. The DHO relied upon the reporting staff member's eyewitness account of the incident, photographs and injury assessments conducted on the petitioner and the other inmate, the SIS report outlining the investigation, as well as the

9

petitioner's own statement claiming he had an argument with the victim that "went on to a further altercation" (m.s.j., ex. F, DHO report, § V). The evidence before this court clearly shows that there was "some evidence" to support the DHO's decision, and thus the evidentiary standard of *Hill* was satisfied in this case.

Lastly, the petitioner claims that he had a constitutional right to present a self defense theory at the DHO hearing (petition at p. 4). However, inmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings. *Jones v. Cross*, 637 F.3d 841, 847-48 (7th Cir. 2011) (citing *Scruggs v. Jordan*, 485 F.3d 934, 938–39 (7th Cir. 2007)); *accord Rudd v. Stansberry*, C.A. No. 3:10cv481-HEH, 2011 WL 2970925, at *3 (E.D. Va., July 20, 2011) (slip copy). A DHO is "under no constitutional obligation to allow [an inmate's] claim that he was merely defending himself to serve as a complete defense to the charge of assault." *Jones*, 637 F.3d at 848.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment[1] (doc. 27) be granted. The Clerk of Court is directed to correct the caption to reflect the respondent's last name as "Owen" (*see* m.s.j. at p. 1 n.1).

s/ Kevin F. McDonald  
United States Magistrate Judge

May 31, 2012  
Greenville, South Carolina

---

[1] As matters outside the pleadings have been considered by the court, the motion to dismiss will be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(d).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.